**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**DEWEY WELCH**                                                                            **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO.: 4:15-cv-187-JMV**

**PROP TRANSPORT & TRADING, LLC,**
**GREENVILLE PORT COMMISSION, and**
**TERRAL RIVERSERVICE, INC.**                                                **DEFENDANTS**

<u>**ORDER**</u>

This matter is before the court on the Defendant Prop Transport & Trading, LLC's

Motion to Dismiss for Failure to State a Claim [42]. The court has considered the motion and

accompanying brief, along with the responses and reply. For the reasons detailed herein, the

motion shall be denied.

<u>**Background**</u>

Plaintiff Dewey Welch ("Welch") filed a complaint under the Jones Act, alleging that he

was severely injured while working in his capacity as a barge-loading supervisor for his

employer, Defendant Prop Transport & Trading, LLC ("Prop Transport"). As an employee of

Prop Transport, Welch alleges that he was charged with the following responsibilities: "boarding

the barge prior to it being loaded; inspecting the barge; supervising the loading of the barge; and

ensuring that the barge is being loaded in a manner so that it could be safely transported from

Greenville, Mississippi to Galveston, Texas." Am. Compl. [2] at ¶ 8. The mission of the barges

was allegedly to transport "fracking sand." *Id.* at 4 n.1. On a typical day, Welch alleges that he

would access the barge via a fixed metal ladder. *Id.* at ¶19. But when the water levels would get

too low, Welch alleges that it was Prop Transport's practice to use a crane-operated "man

bucket" to transfer him from the dock to the barge. *Id.* at ¶ 20. It was such practice that allegedly led to Welch's injuries. *Id.* at ¶ 25.

Specifically, Welch alleges that on or around September 24, 2014, he sustained severe personal injuries following an attempt to transfer him via a "man bucket" from the dock onto the barge that he had been assigned. *Id.* According to the allegations in the Amended Complaint [2], Welch was dropped in a crane-operated "man bucket" onto the steel deck of a barge, then into the water below, then jerked back up out of the water and slammed repeatedly into the hull of the barge while still in the "man bucket." *Id.* at ¶¶ 28-29. Welch alleges that the operator of the crane was an employee of the Greenville Port Commission ("the Port"). *Id.* at ¶ 35. Welch alleges that the Defendants, Prop Transport and the Port, are liable under the Jones Act, 46 U.S.C. §§ 30104-30105, and alternatively, under the Longshore Harbor Workers Compensation Act, 33 U.S.C. §§ 901-950 ("LHWCA").

Defendant Prop Transport filed a Motion to Dismiss [42] on August 31, 2016. In its Motion to Dismiss [42], Prop Transport argues that the court can determine, as a matter of law, based upon the allegations in Welch's complaint, that Welch is a "maritime employee," and covered under the LHWCA, as opposed to a "seaman," and covered under the Jones Act. Motion to Dismiss [42] at 1. Prop Transport further argues that the benefits provided by the LHWCA are the exclusive remedy for Welch. *Id.* Accordingly, Prop Transport requests that this court enter an order dismissing all of Welch's claims against it for failure to state a claim upon which relief may be granted. Memorandum in Support of Motion to Dismiss [43] at 11.

### **Standard of Review**

A pleading must contain a short and plain statement of the claim, showing the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). Motions to dismiss test the sufficiency of a plaintiff's

complaint. *See Guthrie v. Tifco Inds.*, 941 F.2d 374, 379 (5th Cir. 1991). On a Rule 12(b)(6) motion, the court's inquiry is essentially limited to the content of the complaint. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994), *cert. denied,* 513 U.S. 868.

To survive a motion to dismiss, plaintiffs are required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Put differently, "[f]actual allegations must be sufficient to raise a non-speculative right to relief." *Colony Ins. Co. v. Peachtree Constr. Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

## Analysis

### A. What qualifies an individual as a Jones Act seaman?

The threshold issue before the court is the status of the person seeking relief. 7 West's Fed. Forms, Admiralty § 10911 (4th ed.). The Jones Act does not define "seaman"; this "difficult—perhaps insurmountable—task" has been left to the courts. *See In re Endeavor Marine, Inc.,* 234 F.3d 287, 290 (5th Cir. 2000); *Naquin v. Elevating Boats, L.L.C.,* 744 F.3d 927, 932 (5th Cir. 2014); *St. Romain v. Industrial Fabrication and Repair Service, Inc.,* 203 F.3d 376, 378 (5th Cir. 2000). This court is tasked with the duty of determining if the facts, as alleged, create a genuine issue of material fact as to whether Mr. Welch qualifies as a "seaman" under the Jones Act.

Welch claims that he is a Jones Act seaman, while Defendants argue that he is actually a longshoreman. It is well-settled that the Jones Act and the LHWCA are "mutually exclusive compensation regimes." *Valentine v. L & L Sandblasting, Inc. Corp.*, 2016 WL 3648290, at *2 (W.D. La. July 1, 2016); *Becker v. Tidewater*, 335 F.3d 376, 386 (5th Cir. 2009); *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 553 (1997); *see also Chandris, Inc. v. Latsis*, 515 U.S. 347, 359 (1995) (*citing McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347 (1991)) ("[w]ith the passage of the LHWCA, Congress established a clear distinction between land-based and sea-based maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seamen.").

To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. Land-based workers are not seamen. *Valentine*, 2016 WL 3648290, at *2 (W.D. La. July 1, 2016); *Alexander v. Express Energy Services Operation, L.P.*, 784 F.3d 1032, 1033 (5th Cir. 2015) (*citing Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 346 (5th Cir. 1999)). "The key to seaman status is employment-related connection to a vessel in navigation." *Id.* (*citing Wilander*, 498 U.S. at 355). Although "[i]t is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, . . . a seaman must be doing the ship's work." *Id.* (*citing Wilander*, 498 U.S. at 354).

*Wilander* requires that an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission," and this "captures well an important requirement of seaman status." 498 U.S. at 355. "An injured person claiming the benefits of the Jones Act . . . has the burden of establishing seaman status." *Becker*, 335 F.3d at 389 n.8 (*citing Barrett v. Chevron, U.S.A., Inc.*, 752 F.2d 129, 132 (5th Cir. 1985)). The "seaman" need not be physically aboard his vessel when injured as a condition precedent to Jones Act coverage, provided that at

the time of his injury he was in the liberally defined "service of the ship"/"course of his employment." 7 West's Fed. Forms, Admiralty § 10911 (4th ed.).

The courts employ the following test in order to determine if an individual worker is a seaman, and is therefore entitled to the protections of the Jones Act:

> A plaintiff must demonstrate that: (1) his duties contribute to the function of the vessel or to the accomplishment of its mission, and (2) the worker must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature (the "substantial-connection" prong).

*Valentine*, 2016 WL 3648290, at *2; *Alexander*, 784 F.3d at 1034 (*citing Chandris*, 515 U.S. at 368). "The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Harbor Tug,* 520 U.S. at 554. The Court discussed this balance in *Chandris* as follows: "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." *Chandris*, 515 U.S. at 369.

**B. <u>Does Welch allege sufficient facts to create a genuine issue of material fact as to whether he qualifies as a seaman under the Jones Act?</u>**

The ultimate question is whether Welch alleges sufficient facts in his amended complaint in order to create a genuine issue of material fact as to whether he qualifies as a seaman, and whether Welch qualifies as a seaman hinges upon whether he fits the exclusion of the LHWCA as "a master or member of a crew of any vessel." Defendant Prop Transport's first argument is that the exclusive remedy for barge-loading supervisors is under the LHWCA, not the Jones Act. Motion to Dismiss [43] at 9.

In support of such conclusion, Prop Transport cites *Gilliam v. Wiley N. Jackson Co.*, 659 F.2d 54 (5th Cir. 1981). Defendant was correct in noting that the plaintiff in *Gilliam*, a barge-loading supervisor, was found to have met the status requirement under the LHWCA and was

therefore entitled to compensation. *Gilliam*, 659 F.2d at 58. However, as Welch noted in his response to the motion to dismiss [57], Gilliam did not allege Jones Act status, Gilliam merely sought review of an administrative decision denying him benefits under the LHWCA. *Id.* at 54.

The court finds the Supreme Court's reasoning in *Gizoni* to be particularly helpful here. The Court reasoned,

> While in some cases a ship repairman may lack the requisite connection to a vessel in navigation to qualify him for seaman status, (citations omitted) not all ship repairman lack the requisite connection as a matter of law. This is so because 'it is not the employees particular job that is determinative, but the employees connection to a vessel.'

*Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 89 (1991) (*citing Wilander*, 498 U.S. at 354).

Similarly, this court declines to find that because Gilliam, a barge-loading supervisor, was entitled to benefits under the LHWCA, the LHWCA must be Welch's exclusive remedy as well. Accordingly, the court will employ the appropriate two-step analysis, as set forth in *Chandris*, to determine whether Welch alleges sufficient facts to defeat a Fed. R. Civ. Pro. 12(b)(6) motion.

### 1. Does Welch sufficiently allege that his duties contributed to the function of the vessel or to the accomplishment of its mission?

Welch alleges that the crux of his duties as a barge-loading supervisor was to regularly load "fracking sand." Amended Complaint [2] at 4 n.1. In the Amended Complaint [2], Welch alleges that his job responsibilities as an employee of Prop Transport included, "boarding the barge prior to it being loaded; inspecting the barge; supervising the loading of the barge; and ensuring that the barge is loaded in a manner so that it could be safely transported from Greenville, Mississippi to Galveston, Texas." *Id.* at ¶ 8. Further, Welch alleges that his "job responsibilities required him to board and remain aboard inland river barges prior to and while they were being loaded, while they were afloat and in the navigable waterways of the United

States." *Id.* at ¶ 9. According to Welch, "his actions contributed to the mission of the barge fleet, and constituted 'ship's work.'" *Id.* at ¶ 13.

Taking these facts as true, Welch sufficiently creates a genuine issue of material fact as to whether he was contributing to the function of the vessel and/or the accomplishment of its mission. Welch sufficiently alleges, at this early juncture, that the "ship's work" was to transport fracking sand, and without his lead as barge-loading supervisor, such mission would have failed.

> **2. Does Welch sufficiently allege that he has a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature?**

Prop Transport's second argument is that Welch lacks the requisite connection to a vessel or fleet of vessels required for seaman status. Defendant's Reply to Motion to Dismiss [58] at 5.

What constitutes a "vessel" is given broad latitude in judicial decisions. *Stewart v. Dutra Const. Co.*, 543 U.S. 481 (2005). Also, the "vessel" must be "in navigation," meaning that it is engaged as an instrument of commerce and transportation on navigable waters. *Garret v. Dean Shank Drilling Co., Inc.*, 799 F.2d 1007 (5th Cir. 1986). However, "'in navigation' does not require that the vessel be moving. It may be in port or undergoing repair." 7 West's Fed. Forms, Admiralty § 10911 (4th ed.).

"The Court of Appeals for the Fifth Circuit was the first to hold that a worker could qualify as a seaman based on his connection to a group of vessels rather than a particular one." *Harbor Tug*, 520 U.S. at 555. In *Braniff v. Jackson Ave.-Gretna Ferry, Inc.,* 280 F.2d 523 (1960), the Fifth Circuit held that there is "no insurmountable difficulty" in finding seaman status based on the employee's relationship to "several specific vessels"—"an identifiable fleet"—as opposed to a single one. *Braniff*, 280 F.2d at 528. In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the

question is whether the vessels are subject to common ownership or control. *Harbor Tug*, 520 U.S. at 557.

The second prong of the test to determine which maritime employees are entitled to the benefits conferred upon seamen by the Jones Act is quite broad. The Supreme Court, quoting Benedict on Admiralty, has held: "If it can be shown that the employee performed a *369 significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied." *Chandris*, 515 U.S. 347, 368–69 (1995) (quoting Benedict on Admiralty § 11a, pp. 2–10.1 to 2–11 (7th ed. 1994)).

Welch alleges the following facts which are pertinent to the court's analysis under the "substantial connection" prong:

a. Welch alleges that he was "assigned to perform work aboard an identifiable group of vessels, more particularly, inland river barges, that during the time in question were being used to transport sand owned by Prop Transport pursuant to a contract and/or contracts between Prop Transport and another unknown entity." Am. Compl. [2] at ¶ 10.

b. Welch alleges "that this was the third time within six weeks that [he] had been assigned to load this particular barge." *Id.* at ¶ 11.

c. Welch alleges that "at all relevant times, the fleet of barges to which [he] was assigned, as well as the particular barge, the TRS 138, upon which [he] was working when he was injured, were all 'vessels in navigation.'" *Id.* at ¶ 12.

d. Welch further alleges that "Typically, in the performance of his duties, [he], once he got to work each morning, was required to climb down a fixed metal ladder from the dock onto the barge to which he had been assigned." *Id.* at ¶ 19.

With regard to temporal *duration*, "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases." *Chandris*, 515 U.S. at 371. According to the allegations in the Amended Complaint [2], Welch spent a significant amount of time in the service of a vessel "boarding a barge prior to it being loaded; inspecting the barge; supervising the loading of the barge; and ensuring that the barge is loaded in a manner so that it could be safely transported." Am. Compl. [2] at ¶ 8.

With respect to the *nature* portion of the *Chandris* test, the court is to determine whether the plaintiff alleges that he was regularly exposed to the perils of the sea. At this stage of the proceedings, Welch sufficiently alleges that he "was exposed to the perils of navigation." *Id.* at ¶ 14.

Defendant Prop Transport cites *Duet v. American Commercial Lines, LLC*, 2013 WL 1682988 (E.D. La. April 17, 2013), in support of its position that Welch cannot satisfy the *nature* portion of the second prong. Defendant's Reply to Motion to Dismiss [58] at 8. In its decision not to remand the case, the *Duet* court determined that the repairman was not, as a matter of law, entitled to recover under the Jones Act. *Duet*, 2013 WL 1682988, at *6. The court's decision hinged upon the fact that Duet was not regularly subjected to the perils of the sea. *Id.* at *5. The *Duet* court concluded that a reasonable jury could not find that Duet was exposed to the perils of the sea on a consistent basis.

However, this court is not prepared at this early juncture to make such a determination regarding Welch as a matter of law. Welch alleges that he boarded his assigned barge each morning, Am. Compl. at ¶ 19, and alleges that while aboard he inspected and supervised the loading of the barge and remained on the barge until the end of his workday. *Id.* at ¶ 9. As such, this court finds that he has sufficiently alleged that he was "exposed to the perils of navigation" at this time. *Id.* at ¶ 14.

Thus, Welch creates a genuine issue of material fact regarding whether he was assigned to a vessel and that there was common ownership of such vessel or fleet of vessels. *See id.* at ¶ 10. Welch's allegations also create a genuine issue of material fact with regard to whether he had a "substantial connection" to a vessel or fleet of vessels.

Prop Transport, however, urges a lack of predictability by allowing Welch to go forth on his Jones Act claims—urging that "employers relinquished their defenses to tort actions in exchange for limited and predictable liability." Motion to Dismiss [57] at 9 n.1 (*citing Morrison-Knudsen Const. Co. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 461 U.S. 624, 636 (1983)). The Supreme Court also relayed its concern regarding predictability—how is an employer to know that his employee is subject to the Jones Act—in *Harbor Tug*. 520 U.S. at 558. In *Harbor Tug*, the Court reasoned that an employer should be "able to predict who will be covered by the Jones Act and, perhaps more importantly for purposes of employers' workers' compensation obligations, who will be covered by the LHWCA before a particular work day begins." *Id.*

Welch alleges in his response to the motion to dismiss [57] that both the employer, Prop Transport, and the employee, Dewey Welch, knew, every morning, that Mr. Welch's day would be spent aboard a vessel in navigation. The undersigned agrees that Welch has alleged sufficient

facts to show that it would be predictable to Prop Transport that Welch would be covered by the Jones Act considering Welch was expected to board the barge to which he had been assigned "every morning." *Id.* at ¶ 19. At this stage of the proceedings, the undersigned finds that Welch's amended complaint sufficiently states a connection to a vessel or fleet of vessels for Jones Act purposes.

**C.** **Does Prop Transport have to be a vessel owner in order for it to be liable under the Jones Act?**

The court sees fit to briefly address Prop Transport's allegations that it was not a vessel owner or operator, and thus is immune from liability. Motion to Dismiss [43] at 11. Pursuant to *Barrios*, "The employer need not be the owner or the operator of the vessel." *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972). "A Jones Act claim . . . requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection, for '(b)y the express terms of the Jones Act an employer-employee relationship is essential to recovery.'" *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975); *Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980).

The injury causing acts or omissions of third parties, be they agents or otherwise, may be imputed to a Jones Act employer. *Hopson v. Texaco, Inc.*, 383 U.S. 262 (1966). The employer's Jones Act duty is to provide his seamen employees a reasonably safe place to work. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314 (5th Cir. 1977) (*overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)).

While the employer does not have to be the vessel owner, "There must be evidence from which at least an inference can be made that the employer knew or reasonably should have

known of the unsafe condition." 7 West's Fed. Forms, Admiralty § 10911 (4th ed.) (*citing*

*Havens v. F/T Polar Mist*, 996 F.2d 215 (9th Cir. 1993)). This duty is non-delegable. *Id.* (*citing*

*Bertrand v. International Mooring & Marine Inc. v. Fidelity & Casualty Company*, 710 F.2d 837

(5th Cir. 1983)). Welch sufficiently alleges that Prop Transport, while not the vessel owner,

knew or should have known of the unsafe condition. Welch alleges the following in regard to

Prop Transport's knowledge:

1. When the Mississippi River fell to such a level so as to make the barges to which Welch had been assigned inaccessible by a ladder, Prop Transport resorted to use of a crane to provide access to the barge. The traditional purpose of the crane was to remove and reposition the covers on the barge, but Prop Transport transformed it into a "man bucket." Am. Compl. [2] at ¶ 20.

2. The homemade "man bucket" would move personnel from the dock to the barges. The operator of the crane would use the crane "to lift the person/persons in the bucket from the dock, swing the bucket and those inside it out over the water and the barge far below, and using the crane controls, lower the bucket and its human cargo, swinging as it was, onto the steel barge deck." *Id.* at ¶ 21.

3. "This means of access and egress to and from the barges was, and is, inherently unsafe. Upon information and belief, prior to the date of this accident this particular crane had experienced problems in the form of the crane unexpectedly 'free spooling' causing the bucket to suddenly and unexpectedly drop." *Id.* at ¶¶ 22-23.

Accordingly, because Welch has sufficiently alleged that he was employed by Prop

Transport and that Prop Transport knew or should have known of the unsafe condition, Welch

survives a 12(b)(6) motion on this issue.

**<u>Conclusion</u>**

Albeit true that the LHWCA may be the exclusive remedy for an "employee," the term employee does not include "a master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G). Based upon the facts pled in the amended complaint, the undersigned declines to definitively find as a matter of law that Welch's work as a barge-loading supervisor precludes him from seaman status under the Jones Act.

Based upon the foregoing reasons, the motion to dismiss [42] is **DENIED**.

**SO ORDERED** this, the 1st day of November, 2016.

/s/ Jane M. Virden_____
**UNITED STATES MAGISTRATE JUDGE**