IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DEWEY WELCH**                                                                                           **PLAINTIFF**

**VS.**                                             **CIVIL ACTION NO.: 4:15-cv-187-JMV**

**PROP TRANSPORT & TRADING, LLC,**
**GREENVILLE PORT COMMISSION, and**
**TERRAL RIVERSERVICE, INC.**                                      **DEFENDANTS**

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the court on the Defendant Greenville Port Commission's Motion for Partial Summary Judgment [82]. The court has considered the motion and accompanying brief, along with the response and reply. For the reasons detailed herein, the motion shall be granted.

## Background

Plaintiff Dewey Welch ("Welch") filed a complaint alleging that he was severely injured while in the bucket of a crane working in his capacity as a barge-loading supervisor for his employer, Defendant Prop Transport & Trading, LLC ("Prop Transport"). Welch makes a number of claims against his employer including general negligence; maintenance and cure (punitives); alternatively, he brings claims under the Jones Act as a seaman, 46 U.S.C. §§ 30104-30105; and alternatively, he brings claims under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950. Pertinent to the instant motion, Welch also brings claims against the Greenville Port Commission ("the Port"). Welch alleges that the operator of the crane was an employee of the Greenville Port Commission ("the Port"). *Id.* at ¶ 35. Welch alleges that the Port is liable under state law for general negligence and under general maritime law for unseaworthiness.

1

Defendant the Port filed a Motion for Partial Summary Judgment [82] on December 16, 2016. In its Motion for Partial Summary Judgment [82], the Port argues that the court can determine as a matter of law that Welch cannot state an unseaworthiness claim against it because it is not the owner or operator of the vessel upon which Welch was allegedly injured. The Port further argues that it is entitled to the protections afforded to governmental entities by the Mississippi Tort Claims Act ("MTCA") as to Welch's state law claims for general negligence. Accordingly, the Port requests that this court enter an order granting its motion for partial summary judgment.

## **Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir. 2008). In deciding whether a fact issue has been created, courts must view the evidence in the light most favorable to the non-moving party. *See Haverda v. Hays Cnty., 723 F.3d 586, 591* (5th Cir. 2013).

The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. "'The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient' to preclude summary judgment; instead, 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Huggins*, 858 F. Supp. 2d at 698 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir. 1993); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "It is well settled in the Fifth Circuit that 'the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Huggins*, 858 F. Supp. 2d at 698 (quoting *Little*, 37 F.3d at 1075).

## Analysis

**A. The Port is entitled to summary judgment on Welch's claim of unseaworthiness.**

There is no ground for imposing liability under general maritime law for unseaworthiness as against the Port because the Port did not own or operate the vessel in question. "Independent from a claim under the Jones Act, a seaman has a claim for injuries caused by the unseaworthiness of a vessel under general maritime law. The duty of a vessel owner to provide a seaworthy vessel is an absolute non-delegable duty; the duty imposes liability without fault." *Fluker v. Manson Gulf, LLC*, 193 F. Supp. 3d 668, 675 (E.D. La. 2016); *see Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 548-49 (1960).

The Fifth Circuit has found that "a vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage might be improper." *Fluker*, 193 F. Supp. 3d at 675 (*citing Usner v. Luckenbach Overseas Corp.*, 91 S.Ct. 514, 517–18 (1971) (internal citations omitted)); *see also Webb v. Dresser Indus.*, 536 F.2d 603, 606 (5th Cir. 1976),

*cert. denied* 429 U.S. 1121 (1977). "A vessel is unseaworthy when an unsafe method of work is used to perform vessel services." *Rogers v. Eagle Offshore Drilling Serv.*, 764 F.2d 300, 303 (5th Cir. 1985); *Burns v. Anchor–Wate Co.*, 469 F.2d 730 (5th Cir.1972).

However, to be held liable for breach of the duty of seaworthiness, the defendant "must be in the relationship of an owner or operator of a vessel." *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981); *Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir.), *cert. denied*, 375 U.S. 832 (1963). "It is well-settled . . . that the doctrine of 'seaworthiness' is not applicable to a dock owner who does not occupy the position of owner or operator of the vessel." *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993); *Daniels,* 317 F.2d at 44; *Baker,* 656 F.2d at 181.

In *Daniels*, the Fifth Circuit held that:

> The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel. The usual relationship for recovery has been referred to as three-cornered: master, i.e., owner or operator, vessel and shipworker. *Dimas v. Lehigh Valley Railroad Company*, 234 F.2d 151. The sole connection of the dock owner here with the ship on which the injured seamen were employed was in the tacit allowance of the use of the ladder by the seamen. The dock owner did not occupy the position of owner or operator of the vessel. The refusal of the District Court to apply the doctrine was proper.

*Daniels*, 317 F.2d at 43-44.

Welch does not argue that the Port is a vessel owner or operator. He also cites no case law to the effect that the Port may be held liable because the crane that was used on the date of the accident may be considered an appurtenance. While the crane may potentially be considered an appurtenance,[1] the unseaworthiness claim as against the Port must fail. "That (a vessel) owner is liable to indemnify a seaman for an injury caused by the unseaworthiness of the vessel or its

---

[1] "The means of access between a dock and a vessel is considered an 'appurtenance' of the vessel." *Romero Reyes v. Marine Enterprises, Inc.,* 494 F.2d 866 (1st Cir. 1974).

appurtenant appliances and equipment has been settled law in this country ever since *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; *Mahnich v. Southern S. S. Co.*, 321 U.S. 96, 99, 64 S.Ct. 455, 88 L.Ed. 561, 564, and authorities cited." *Drachenberg v. Canal Barge Co.,* 571 F.2d 912, 918 (5th Cir. 1978).

The Fifth Circuit in *Drachenberg* noted that "certain types of temporary attachment to the vessel by equipment not part of the ship's usual gear or stored on board or controlled by the ship's crew can satisfy the requirements for [equipment to be appurtenant to the vessel]." *Drachenberg v. Canal Barge Co., Inc.,* 571 F.2d 912, 920 (5th Cir. 1978). The court also observed that it is "highly significant" when an accident occurs on-board the vessel as opposed to dockside. *Id.* at 921. Where an injury occurs on-board the vessel, a court should look only to whether there is a "minimal attachment" between the equipment and the ship. *Id.* Drilling tools, ROVs, and stevedore's runners have been held to be appurtenances to a vessel. *See Clay v. ENSCO Offshore Co.*, 146 F. Supp. 3d 808 (E.D. La. 2015) ("A drilling tool that became ejected from its position on semisubmersible drilling vessel, and struck and injured worker who was attempting to rotate the tool, was an appurtenance to the vessel, to which employer's duty as vessel owner to provide seaworthy vessel extended."); *Halle v. Galliano Marine Serv., LLC*, 2016 WL 1558829, at *1 (E.D. La. Apr. 18, 2016) ("ROVs have been found to be appurtenances. ROVs are unoccupied mechanical devices tethered to a vessel and controlled by the ROV crew aboard the vessel."); *Rogers v. United States Lines*, 347 U.S. 984 (1954), *rev'g*. 205 F.2d 57 (C.A. 3, 1954) (The Supreme Court held that the stevedore's land fall runner, "adopted by the vessel and incorporated with the ship's cargo handling equipment, became an appurtenance of the vessel.").

However, it is well-settled that the liability for unseaworthiness remains with the vessel owner or operator because the key inquiry as to whether an item is an appurtenance is whether it has been "adopted by the vessel and incorporated with the ship." *Clay*, 146 F. Supp. 3d at 813. The record discloses no genuine dispute of material facts regarding the lack of the Port's ownership of the subject barge. Thus, summary judgment must be granted on this issue in favor of the Port. Having now dispensed of the general maritime claim, the court turns to whether Welch's state law negligence claims are governed by the MTCA.

**B. The MTCA governs Welch's remaining claims against the Port.**

The MTCA (Miss. Code Ann. § 11-1-46 *et seq.*) "provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a claim or suit." *Kmart Corp. v. Kroger Co.*, 963 F. Supp. 2d 605, 610 (N.D. Miss. 2013); *see* Miss. Code Ann. § 11-46-7(1). "The MTCA waives sovereign immunity for tort claims for money damages against governmental entities and their employees." *Id.*; *see also, Dancy v. E. Miss. State Hosp.,* 944 So.2d 10, 15 (Miss. 2006).

According to the "Definitions" provided under the MTCA, "governmental entity" means "the state and political subdivisions." Miss. Code Ann. § 11-46-1(g). Welch alleges in his amended complaint, and the Port agrees, that "The Port Commission is a political subdivision of the State of Mississippi." Am. Compl. [2] at ¶ 6. Welch also served a Notice of Claim upon the Port in compliance with Miss. Code Ann. § 11-46-11. Notice of Claim [2] at 17.

However, in his response in opposition to the motion for partial summary judgment [92], Welch argues that:

> The doctrine of sovereign immunity, as applied to the states, is designed to protect the state treasuries of the individual states. Cognizant of the burden placed upon those who have been injured through tortious actions committed by states employees, many states have voluntarily consented to be sued so long as certain

> procedural requirements are met and certain limitations upon recoveries are not exceeded. This consent is accomplished through various tort claims acts. Mississippi is one such state. The Mississippi Tort Claims Act is codified at Miss. Code Ann. § 11-1-46 et seq. *However, if the underlying political subdivision of the state is not entitled to [Eleventh Amendment] sovereign immunity protection in the first place, then the tort claims act and it restrictions and limitations have no application.*

Plaintiff's Response in Opposition [92] at 5 (emphasis added). Counsel cites no authority for this premise, but goes on to build the entirety of his argument on it. First, he cites a plethora of cases for the well-known principle that only state agencies or their arms (and not mere political subdivisions with more local concerns) are entitled to Eleventh Amendment immunity. Second, he alleges that because the Port, a mere political subdivision, is not entitled to Eleventh Amendment protection, the MTCA has no application to state law claims asserted against it. This logic is clearly flawed as can be demonstrated a number of ways.

For example, the MTCA expressly *excludes* from its coverage claims subject to Eleventh Amendment immunity. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Obviously, to suggest that a lengthy legislative act (MTCA) was enacted to remediate what counsel refers to as the burdensome effects of the Eleventh Amendment, when the MTCA itself expressly excludes from its coverage claims subject to the Eleventh Amendment, is illogical.

Indeed, inasmuch as the MTCA is the only vehicle pursuant to which a political subdivision of the state may be pursued[2], it is curious that Welch persists in arguing he may not proceed against what he acknowledges is a political subdivision of the state (the Port) pursuant thereto. For these, as well as the reasons and authorities cited by the Port, the court finds Welch's argument that his state law claims against the Port are not to be governed by the MTCA to be

---

[2] See Miss. Code Ann. § 11-46-7 Exclusiveness of Remedy.

without merit. Pursuant to Miss. Code. Ann. § 11-46-15(2), Welch's claim for punitive damages against the Port must be dismissed.

## Conclusion

In light of the foregoing, it is appropriate to grant the Port's Motion for Partial Summary Judgment [82]. The court dismisses with prejudice: (1) Welch's claim for unseaworthiness against the Port; (2) Welch's claim against the Port for damages in excess of $500,000; and (3) Welch's claim for punitive damages against the Port.

**SO ORDERED** this, the 10th day of March, 2017.

/s/ Jane M. Virden  
**UNITED STATES MAGISTRATE JUDGE**